**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonio JOHNSON, Defendant–Appellant.**

No. 94–2188.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1994.

Decided Feb. 6, 1995.

Robert J. Thomas, Jr., St. Louis, MO, argued, for appellant.

Edward J. Rogers, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Antonio Johnson appeals his conviction and sentence for conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii)(IV) (1988). Johnson argues that the district court[1] erred in: (1) denying his motion to dismiss the indictment for governmental misconduct; (2) denying his motion to suppress the incriminating statements that he made to law enforcement officers; (3) denying his motion to transfer the trial to another district; and (4) calculating his offense level for sentencing purposes. We affirm.

## I. BACKGROUND

In November 1991, the Drug Enforcement Administration ("DEA") received information that large quantities of cocaine were being transported from California to St. Louis. The DEA and local law enforcement officers commenced a joint investigation into drug trafficking in the St. Louis area. Confidential informants identified Antonio Johnson and Keith Williams as two of the individuals involved in receiving and distributing the drugs.

On September 16, 1992, local law enforcement officers apprehended Johnson after he fled a surveillance scene. Johnson made a statement denying his involvement in drug-related activity, and he was released from custody. On October 8 and 13, Johnson met with DEA agents. Johnson admitted that he had distributed drugs, implicated others who had been involved, and discussed the amounts of cocaine and money that he had received. Johnson also indicated that he had stored cocaine and large amounts of cash at various female friends' apartments, including Kniangela Casey.

On October 15, 1992, Ondre Piernas and Alvin Friedman, two of the drug suppliers from California, were indicted for conspiracy to distribute and possess with intent to distribute cocaine. Piernas was also charged with additional counts of drug trafficking. On December 10, the government filed a superseding indictment and charged Antonio Johnson, Keith Williams, and Kniangela Casey with conspiracy to distribute and possess with intent to distribute cocaine.

While Johnson was incarcerated awaiting trial, a confidential informant telephoned him and arranged a three-way call with a government agent. Johnson and the government disagree on what transpired during this incident. Johnson claims that both the informant and agent urged him to fire his attorney and plead guilty to the drug charges. The government claims that the informant initiated the three-way call and that the agent never spoke directly to Johnson. Instead, the agent instructed the informant to disconnect Johnson, which he did. As a result of the government's alleged misconduct during this incident, Johnson filed a motion to dismiss the indictment.

The district court denied Johnson's motion to dismiss, concluding that the agent did not

---

1. The Honorable Donald J. Stohr, United States District Court Judge for the Eastern District of Missouri.

instigate the three-way call and that the government did not acquire any information about Johnson's trial preparation. Furthermore, the court found no evidence that Johnson was harmed in any way or that his attorney-client relationship was compromised. The court also denied Johnson's motion to suppress the statements that he made to law enforcement officers and his motion to transfer the trial to another district.

Johnson's four co-defendants entered plea agreements and testified against him at trial. The jury found Johnson guilty. At sentencing, the district court found that Johnson was responsible for 66.5 kilograms of cocaine and calculated his base offense level at thirty-six. USSG § 2D1.1(a)(3). The court then increased Johnson's base offense four levels because of his role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). The court also increased two levels for possession of a firearm, USSG § 2D1.1(b)(1), and two levels for obstruction of justice, USSG § 3C1.1. With these adjustments, Johnson's offense level totalled forty-four.[2] The mandatory sentence for this offense level under the United States Sentencing Commission, *Guidelines Manual*, Ch. 5, Pt. A (Nov. 1993), is life imprisonment, and the court sentenced Johnson accordingly.[3] He appeals his conviction and life sentence.

## II. DISCUSSION

### A. *Motion to Dismiss*

■ Johnson argues that the government intentionally infringed on his Sixth Amendment right to assistance of counsel[4] and that the court should have dismissed the indictment against him. Johnson claims that because the government agent contacted him and urged him to fire his attorney, his attorney-client relationship was compromised and he was forced to retain other counsel. However, the government claims that Johnson's former counsel withdrew due to a conflict of interest unrelated to this incident.

In order to obtain a dismissal of the indictment, "[t]he defendant must show that the representation he received or the proceedings leading to the conviction were adversely affected by virtue of the Sixth Amendment violation...." *United States v. Solomon*, 679 F.2d 1246, 1250 (8th Cir.1982). Even were we to accept Johnson's arguments that the government instigated the three-way call and violated his Sixth Amendment rights, he has failed to demonstrate a nexus between this intrusion and any benefit derived by the prosecution. *See United States v. Davis*, 646 F.2d 1298, 1303 (8th Cir.), *cert. denied*, 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981). We conclude that the district court did not err in denying Johnson's motion to dismiss the indictment.

### B. *Motion to Suppress*

Johnson claims that the incriminating statements that he made to the DEA agents were coerced and involuntary. He claims that he would not have made these statements if the agents had not threatened that he would be indicted if he refused to admit his involvement in drug trafficking. The government argues that Johnson was not in custody when these statements were made, and in any event, Johnson was informed of his *Miranda* rights[5] prior to making any statements.

■ We review the issue of whether a confession was voluntary as a question of law subject to *de novo* consideration, but we review the district court's determination of the facts underlying its decision under the clearly erroneous standard. *United States v. Casal*, 915 F.2d 1225, 1228 (8th Cir.1990), *cert. denied*, 499 U.S. 941, 111 S.Ct. 1400, 113 L.Ed.2d 455 (1991). The voluntariness of a

---

**2.** Pursuant to USSG Ch. 5, Pt. A, comment. (n. 2), "[a]n offense level of more than 43 is to be treated as an offense level of 43."

**3.** Pursuant to 21 U.S.C. § 841(b)(1)(A), the court also sentenced Johnson to five years supervised release.

**4.** "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.

**5.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

confession is determined by considering all of circumstances surrounding the confession. In particular, the court examines "the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." *Id.* (quotation omitted).

In this case, the district court found that Johnson voluntarily met with the DEA agents and that he was not in custody. Furthermore, the court found that the agents advised Johnson of his *Miranda* rights and that he waived his right to remain silent. We see no clear error in the district court's factual determination that Johnson was not coerced into making the statements, and we conclude that the court did not err in denying Johnson's motion to suppress these statements.

### C. Motion to Transfer

Johnson claimed that the court had made a premature decision regarding his guilt, and he requested that the court transfer his trial to another district. In support of his motion for transfer, Johnson relied on the magistrate court's denial of bond based on its finding that Johnson had been engaged in substantial drug trafficking. On appeal, Johnson argues that the court abused its discretion by failing to transfer his trial to another district.

Although Johnson fashioned this argument as a motion for transfer, *see* Fed.R.Crim.P. 21(a),[6] in essence, he has suggested that the district court should have recused itself, *see* 28 U.S.C. §§ 144[7] and 455(a).[8] We note that "[d]ecisions on recusal or disqualification motions are committed to the district court's sound discretion." *Larson v. United States,*

835 F.2d 169, 172 (8th Cir.1987), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). The evidence submitted by Johnson does not establish that the district court had a personal bias or prejudice against him or that the district court's impartiality could be reasonably questioned. We conclude that the basis for Johnson's argument—that the district court was required to transfer his trial because of the magistrate court's alleged bias—is without merit.

### D. Sentencing

#### 1. The Amount of Cocaine

Johnson argues that the district court erred in finding that he was responsible for 66.5 kilograms of cocaine. He claims that the presentence report was unreliable and that some of the drug transactions may have been counted twice. Johnson also argues that the sentencing court should not have considered his statements to the DEA agents. Although Johnson concedes that the agents informed him of his *Miranda* rights, he argues that he was entitled to a specific warning that his statements could be used against him at sentencing.

We begin by noting that the district court's determination of the amount of drugs attributable to a defendant is a finding of fact, which we review under the clearly erroneous standard. *United States v. Alexander,* 982 F.2d 262, 267 (8th Cir.1992). In this case, the district court made specific findings on which transactions that it included in arriving at the total of 66.5 kilograms of cocaine.[9] Having reviewed the record, we see no clear error in the court's findings.

---

6. "The court upon motion of the defendant shall transfer the proceeding ... to another district ... if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial ... in that district." Fed.R.Crim.P. 21(a).

7. "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party ... another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144.

8. "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

9. The district court included the following amounts of cocaine: the one-half kilogram that Piernas initially delivered to Johnson; the five kilograms that Piernas and Michael Hodges delivered to Johnson and Williams a few days later; the twenty-five kilograms that Piernas delivered to Johnson after Piernas and Hodges had ceased working together; the three ten-kilogram deliveries that Johnson admitted Hodges delivered; and the six kilograms that Johnson admitted he purchased while he was in California.

Likewise, we find no error in the sentencing court's reliance on Johnson's incriminating statements. In *Miranda v. Arizona,* the Supreme Court stated that "[t]he warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court." 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966). The Court explained that the purpose of this warning was to insure that a defendant was aware of the privilege against self-incrimination, understood the consequences of waiving this privilege, and recognized the adversarial nature of the proceedings. *Id.*

Assuming, for the sake of this argument, that Johnson was in custody when he made the incriminating statements, we reject his suggestion that *Miranda* requires a specific warning on the potential sentencing consequences of waiving the right to remain silent. We are unpersuaded that the commonly-given *Miranda* warnings, which advise a defendant that his statements can and will be used against him in court, do not necessarily include the sentencing court.

### 2. *Role in the Offense*

Johnson challenges the district court's four-level enhancement for his aggravating role as leader or organizer of a criminal activity involving five or more participants. *See* USSG § 3B1.1(a). Johnson claims that the three individuals involved in transporting the cocaine from California to St. Louis were actually the ones in control of this drug conspiracy.

The sentencing court's determination of a participant's role in the offense is a factual finding, which we review under the clearly erroneous standard. *United States v. Maxwell,* 25 F.3d 1389, 1399 (8th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994). "We have broadly interpreted the terms 'organizer' and 'leader.'" *Id.* In this case, there was ample evidence that Johnson was instrumental in receiving and paying for large amounts of cocaine and organizing the drugs for redistribution. Contrary to Johnson's arguments, a defendant can be held accountable as an organizer or leader within the meaning of the Sentenc-

ing Guidelines even if he did not directly control others in the conspiracy. *Id.* 25 F.3d at 1400. Moreover, Johnson admitted that he recruited at least seven different women to store and deliver drugs for him. We conclude that the district court's determination of Johnson's leadership role in this offense was not clearly erroneous.

### III. CONCLUSION

Accordingly, we affirm Johnson's conviction and sentence.