

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-16-2006

# USA v. Robinson

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1625

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Robinson" (2006). *2006 Decisions.* Paper 1419.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1419

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1625

———

UNITED STATES OF AMERICA

v.

HERBERT ROBINSON,
a/k/a PAC MAN

Appellant

———

On Appeal the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 95-cr-00252)
The Honorable Juan R. Sanchez, District Judge

———

Submitted Under Third Circuit LAR 34.1(a)
March 9, 2006

Before: ROTH and ALDISERT, Circuit Judges, and RODRIGUEZ,[*] District Judge

(Filed:    March 16, 2006)

———

**OPINION**

———

ALDISERT, Circuit Judge.

---

[*] The Honorable Joseph H. Rodriguez, Senior District Judge, United States District Court
for the District of New Jersey, sitting by designation.

Herbert Robinson (a/k/a "Pac Man") appeals his five-year sentence that was imposed upon revocation of his supervised release pursuant to 18 U.S.C. § 3583(e). On appeal, Robinson argues that the District Court, in sentencing him, committed plain error because it did not adequately consider and analyze those factors listed at 18 U.S.C. § 3553(a) and the policy statements found in Chapter 7 of the Sentencing Guidelines. He also argues that his sentence, which is to run consecutive to the four- to 12-year state sentence he is currently serving, is unreasonable. See United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005) (establishing reasonableness review for sentences). Because Robinson argues that his sentence was "imposed in violation of law" we have jurisdiction to review the sentence imposed pursuant to 18 U.S.C. § 3742(a)(1). We will affirm.

I.

The parties are familiar with the facts and proceedings in the District Court, so we will only briefly revisit them here. On October 16, 2005, Robinson pled guilty in the District Court for the Eastern District of Pennsylvania to six counts of a superceding indictment charging him with conspiring to distribute cocaine base in violation of 21 U.S.C. § 846 and other related offenses. Robinson's original Guidelines sentence was calculated to be between 384 and 465 months, but a downward departure was granted because he pled guilty to the charged offenses and agreed to cooperate with the government. Accordingly, on May 22, 1996, following the grant of downward departure,

2

the Court sentenced Robinson to 90 months imprisonment and eight years of supervised release. He began serving his supervised release on September 18, 2002.

In June 2003, the Court modified Robinson's sentence and required his supervised release to then include a six-month term of home confinement with electronic monitoring. This modification was imposed because, in violation of the terms of his release, Robinson had illegally obtained a New Jersey driver's license and then lied to his probation officer when initially questioned about it.

In December 2003, his period of supervised release was again modified by the Court to include a seven-month term at a community treatment center. This modification was prompted by Robinson being unaccounted for during a three-hour period of his home confinement and again lying to his probation officer when initially questioned about his activities.

On March 4, 2004, the incident spurring the recent revocation of Robinson's term of supervised release occurred. On that date, Robinson was arrested while possessing 28.9 grams of crack cocaine and $4,917. He was also operating a 2000 Lexus. He was charged with: resisting arrest; flight to avoid prosecution; unlawful use of a communication facility; possession of a controlled substance; and manufacture, delivery and possession of a controlled substance with intent to deliver. Robinson was later convicted of these offenses in Pennsylvania state court and was sentenced to four to twelve years in prison. This incident constituted a Grade A violation of his supervised

3

release.[1]

On February 17, 2005, a revocation hearing was held to consider Robinson's violation of the terms of his supervised release. At the hearing, Robinson admitted to the violations. Then, although acknowledging that the Court was not bound by the recommended sentencing range outlined in Chapter 7 of the Guidelines, he argued for a sentence of between 24 and 30 months, calculated pursuant to U.S.S.G. § 7B1.4, to run concurrently with the state sentence he was serving.[2] He also argued that the five-year consecutive sentence recommended by the government was "too much" and that, pursuant to 18 U.S.C. § 3553(a), this sentence was "certainly more than necessary" to accomplish the enumerated statutory factors. No other legal arguments were raised by Robinson.

On February 18, 2005, after giving consideration to the parties' arguments, the Court revoked Robinson's supervised release and sentenced him to 60 months

---

[1] Robinson's 2004 state conviction is a Grade A violation of the terms of his supervised release because it is "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a controlled substance offense . . . ." U.S.S.G. § 7B1.1(a)(1). Not to be confused with a class A felony, which is a classification of the underlying crime for which the defendant was sentence to supervised release, a Grade A violation is relevant under U.S.S.G. § 7B1.4 in determining the recommended sentencing range for a defendant who has violated the terms of his supervised release.

[2] Pursuant to U.S.S.G. § 7B1.4, the recommended range of punishment for Robinson's Grade A violation of the terms of his supervised release was 24 to 30 months. Per § 7B1.4, this sentencing range was calculated using a criminal history category of I, which was the category applicable to Robinson at the time he was originally sentenced to his term of supervision in 1996.

imprisonment to run consecutively to his four- to 12-year state sentence. This five-year

sentence was the maximum allowed under 18 U.S.C. § 3583(e)(3) for a violation of the

terms of supervised release.[3] This appeal followed.

## II.

Because, at sentencing, Robinson neither challenged the adequacy of the District

Court's analysis of the relevant sentencing factors of U.S.S.G. § 7B1.4 or 18 U.S.C. §

3553(a), nor objected that the sentence was unreasonable, we will review these

contentions for plain error. See United States v. Couch, 291 F.3d 251, 252-253 (3d Cir.

2002). Under this standard "[t]here must be an 'error' that is 'plain' and that 'affect[s]

substantial rights.'" United States v. Olano, 507 U.S. 725, 731-732 (1993). "The

deviation from a legal rule is 'error,' and an error is 'plain' if it is 'clear' or 'obvious.'"

United States v. Evans, 155 F.3d 245, 251 (3d Cir. 1998) (quoting Olano, 507 U.S. at

732-734). An error affects substantial rights if it is prejudicial, i.e., "affected the outcome

---

[3] Upon finding that Robinson violated a condition of his supervised release, the Court, after considering the factors set forth in §§ 3553(a)(1), (a)(2)(B)–(D), and (a)(4)–(7), was permitted to revoke his term of supervised release and require him to serve in prison "all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release." 18 U.S.C. § 3583(e)(3). Five years, however, was the maximum prison term that the Court could impose upon Robinson because it is undisputed that his original 1995 offense was a class A felony. Id. ("A defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony . . ..."). In pronouncing sentence under this statutory mandate, the Court was to look to the advisory provisions of U.S.S.G. § 7B1.4 for guidance, but it was not bound to impose a sentence within the recommended Guidelines range. See United States v. Schwegel, 126 F.3d 551, 555 (3d Cir. 1997) (per curiam).

5

of the district court proceedings." Id. at 251 (quoting Olano, 507 U.S. at 734). Ultimately, we review a sentencing decision for reasonableness. Booker, 125 S. Ct. at 767.

III.

Robinson contends that because the Court did not engage in a proper "analogic reasoning or ratcheting process" to determine the degree of departure that should be taken from the sentencing range recommended at U.S.S.G. § 7B1.4, it was therefore error for the Court to impose the maximum sentence allowed by statute. He then argues that because the record is devoid of such an analysis, the pronounced sentence is unreasonable. We disagree. First, the provisions in Chapter 7 of the Sentencing Guidelines are advisory, and we have never required absolute obeisance to their strictures. Second, the factors listed at § 3553(a) are to be *considered* by sentencing courts, nothing more. Finally, in light of Robinson's criminal history and the severity of his 2004 offense, the statutory maximum five-year consecutive sentence is a reasonable punishment.

Even before the Supreme Court made the Sentencing Guidelines advisory, See Booker, 125 S. Ct. at 764-765, this Court had held that the sentencing ranges set forth at U.S.S.G. § 7B1.4 are merely advisory. See Schwegel, 126 F.3d at 552. In fact, the provisions of Chapter 7 of the Sentencing Guidelines are no more than policy statements. U.S.S.G., Ch. 7, Part A(1); United States v. Blackston, 940 F.2d 877, 893 (3d Cir. 1991). In Blackston, this Court stated that the Chapter 7 policy statements are "merely advisory"

6

and that "[c]onsistent with the 'advisory' nature of the Chapter 7 policy statements, the district court, in sentencing a defendant whose supervised release has been revoked, is required only to '*consider* . . . any pertinent policy statement issued by the Sentencing Commission . . . that is in effect on the date the defendant is sentenced.'" Blackston, 940 F.2d at 893 (quoting 18 U.S.C. § 3553(a)(5)) (emphasis in original).

In addition to mandating consideration of the ranges set forth at U.S.S.G. § 7B1.4, Congress also directed sentencing courts to "consider" several of the factors listed at § 3553(a) in setting sentence for a violation of supervised release. 18 U.S.C. § 3583(e). These additional factors to be considered include:

> (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to afford adequate deterrence to criminal conduct; (4) the need to protect the public from further crimes of the defendant; and (5) the need to provide the defendant with appropriate treatment.

Blackston, 940 F.2d at 893 (quoting 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D) & (a)(4)–(7)).

In Blackston, this Court discussed how a sentencing court must treat § 7B1.4 and § 3553(a):

> When working with policy statements (as opposed to guidelines), the district court is not required, in considering revocation of supervised release, to justify its decision to impose a sentence outside of the prescribed range (in this case two years) by finding an aggravating factor that warrants an upward departure under 18 U.S.C. § 3553(b). *In fact, there is no requirement that the district court make specific findings with respect to each of the section 3553(a) factors that it considered.* See United States v. Graves, 914 F.2d 159, 160 (8th Cir. 1990). *At the time of sentencing, the district court simply must state on the record its general reasons under section 3553(a) for rejecting the Chapter 7*

> *policy statements and for imposing a more stringent sentence*. <u>See</u> 18 U.S.C.
> § 3553(c); <u>see also</u> <u>United States v. Lockhard</u>, 910 F.2d 542, 546 (9th Cir.
> 1990).

940 F.2d 877, 893-894 (emphasis added).  In a recent post-<u>Booker</u> opinion, this Court

reiterated that § 3553(a) does not require that findings be made on each factor.  <u>United</u>

<u>States v. Cooper</u>, 437 F.3d 324, 329 (3d Cir. 2006).  Rather, the record must show that the

court meaningfully considered those factors and that it addressed any argument raised by

a party that has "recognized legal merit."  <u>Id.</u> at 329.  Accordingly, unlike the more

elaborate analytic process we require of sentencing courts when deciding on a degree of

upward departure for the initial sentencing of those who have violated a federal criminal

statute, <u>see</u> <u>United States v. Kikumura</u>, 918 F.2d 1084, 1110-1120 (3d Cir. 1990), we

require nothing more than a meaningful consideration of the Chapter 7 policy statements

and the factors listed at § 3553(a) when a court is imposing sentence upon a defendant

who has violated the terms of his supervised release.[4]

---

[4] Robinson argues that when deviating from the recommended Chapter 7 sentence, a sentencing court must follow the strictures we laid down in <u>Kikumura</u>.  Therein, we stated that in order to determine the appropriate degree of upward departure warranted by a defendant, a court must analogize the defendant's conduct to various Guidelines provisions similarly punishing such conduct and then use the sentence those guidelines would recommend to guide the calculation of departure.  <u>Kikumura</u>, 918 F.2d at 1112-1113.  <u>Kikumura</u>, however, did not deal with Chapter 7 of the Guidelines.  Rather, we were concerned with regulating the methodology behind upward sentencing departures so we could ensure that Congress' goal for the Guidelines, the elimination of sentencing disparity, would be met.  <u>Id.</u> at 1110.  Just one year after <u>Kikumura</u> was decided, this Court issued <u>Blackston</u>, and nowhere in <u>Blackston</u> did we state that we require sentencing courts imposing sentence upon those who have violated the terms of their supervised release to engage in the <u>Kikumura</u> methodology.  Rather, we emphasized time and again that Chapter 7, as an advisory statement of sentencing policy, was different from the other

8

IV.

In the instant case, the sentencing court was cognizant of its statutory obligation to consider the Chapter 7 policy statements and the factors listed at § 3553(a). The record also indicates that it duly considered the ranges set forth at § 7B1.4 and the factors of § 3553(a):

> THE COURT: I find that you have committed a grade A violation with your guilty plea to possessing a controlled substance with intent to deliver for which you were sentenced to serve a period of incarceration of not less than four years to not more than twelve years in a state correctional facility. I have also considered the guidelines revocation table which suggests a sentence of 24 to 30 months imprisonment for a grade A violation in your criminal history category of Roman numeral I.
>
> I do note but do not adopt your attorney's argument that the guidelines revocation table already incorporates punishment for the seriousness of your conduct. I have also considered Section 3583 of the code which allows me to impose a sentence of five years imprisonment since the conduct which resulted in the supervised release was a class A felony.
>
> I am charged under the guidelines to impose a sentence sufficient but not greater than necessary to reflect upon the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes by you, and to provide you with the needed educational or vocational training, medical care, all the correctional treatment in the most effective manner.

(Sentencing Transcript, app. at 48.)

The record also shows that the Court was genuinely concerned with the application

chapters of the Guidelines which were at issue in Kikumura. See Blackston, 940 F.2d at 893. Accordingly, because Robinson's case involves a different section of the Guidelines, Chapter 7, we do not require the same level of analysis when departing from the Guidelines' recommended sentence.

of those factors to Robinson's case:

> THE COURT: You are pointing me to 3553(a) and arguing that the sentence to be imposed should be sufficient but not greater than necessary to accomplish the goals as stated in the sentencing goals, promote respect for the law and rehabilitation needs of the defendant. . . . The record here however shows no respect for the law and no regard for or not amenability [sic] to rehabilitation given the two modifications and opportunity that he was given. . . . I mean, the record is not an impressive one, and on the contrary, it says that he has no respect or regard for the law, lies every time he gets in trouble, doesn't comply with conditions. So how would you argue to me that under that section, the five years may not be sufficiently necessary to accomplish those goals?

(Sentencing Transcript, app. at 31.)

Notwithstanding the calls for leniency, however, the Court could not escape

Robinson's recidivistic history, and so found that a *third* chance was not in order:

> THE COURT: Okay. Let me basically tell Mr. Robinson that you stand here before me as a young man who has had three opportunities to take control of your life. In the first instance, you had a lenient sentence, home confinement after you broke two of the conditions of supervised release and break the law in obtaining a New Jersey's driver's license, and three was placed at a residence in a halfway house, and nevertheless, you disregarded the terms of home confinement.
>
> Each time the Government gave you an opportunity to straighten up your life, you squandered that opportunity. You, Mr. Robinson, threw away basically each opportunity and you are in front of me here through nobody's fault but your own.
>
> I have carefully considered your plea for time with your daughters and your regret at your current situation. The time for remorse, however, was 1996 or 2003 or 2004. I think now is a bit late.

(Sentencing Transcript, app. at 46-47.)

Accordingly, after considering all the relevant factors surrounding Robinson's

10

sentencing,[5] the Court found that leniency was not merited in Robinson's case and pronounced the statutory maximum five-year consecutive sentence in lieu of the 24- to 30-month sentence recommended by the Guidelines. The Court couched this harsh sentence in the following reasons: "To reflect the seriousness of [Robinson's] offense, to deter criminal conduct, to protect the public, and to give [him] ample time to take advantage of the prison rehabilitative programs." (Sentencing Transcript, app. at 48.)

The record thus indicates that the District Court demonstrated meaningful consideration of the policy statements of Chapter 7 and the factors of § 3553(a). Accordingly, we do not agree with Robinson's contention that the Court failed to adequately consider the advisory policy factors of Chapter 7 and the factors listed in § 3553(a). Moreover, we also conclude that the sentence is reasonable, both in its length and nature and by virtue of the process by which it was imposed. We therefore conclude that the District Court did not plainly err in imposing sentence.

V.

We have considered all contentions presented by the parties and conclude that no further discussion is necessary. We will affirm the sentence of the District Court.

_____

_____

[5] We also note that, recognizing the gravity of the instant sentencing proceeding, Judge Sanchez specifically stated that he did not believe it fair for him to make such a decision in a mere 15-minute recess. (Sentencing Transcript, app. at 41-42.) Following oral argument on Robinson's sentencing, Judge Sanchez then requested that the parties return the next day so that he could consider Robinson's case at greater length before imposing sentence. Id.

11